**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jermaine Ford, | Civ. No. 08-5072 (JMR/JJK) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dwight Fondren, Warden, | |
| Respondent. | |

Jermaine Ford, #37135-037, Federal Correctional Institution, P.O. Box 1000, Sandstone, MN 55072, *pro se*.

Chad A. Blumenfield, Assistant United States Attorney, counsel for Respondent.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on the Petition of Jermaine Ford for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Petitioner's Petition for Habeas Corpus relief be denied.

## I. INTRODUCTION

Petitioner is a federal inmate currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). (Doc. No. 7, Declaration of Ann Norenberg ("Norenberg Decl.") ¶ 3, Attach. 1.) Petitioner is serving a 178-month sentence, followed by five years of supervised release, imposed by the United States District Court, District of Maryland, for conspiracy

to distribute and to possess with intent to distribute more than 500 grams of cocaine and more than 50 grams of cocaine base, in violation of in violation of 21 U.S.C. § 846.  (*Id.*)  The Petitioner has a projected release date of January 13, 2015, pursuant to Good Conduct Time ("GCT") release.  (*Id.*)

## II.  FACTUAL BACKGROUND

Petitioner has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in the District of Minnesota challenging the result of a Disciplinary Hearing Officer ("DHO") hearing at Federal Correctional Institution Fort Dix, New Jersey ("FCI Fort Dix"), in which it was found that Petitioner had committed the prohibited act of Possession of a Hazardous Tool, a Code 108 violation of Bureau of Prisons ("BOP") policy.  Petitioner alleges that his constitutional due process rights were violated when prison officials failed to follow proper procedures during his prison disciplinary hearing.  As relief, Petitioner seeks to have the incident report expunged or, alternatively, to have a rehearing.

On February 22, 2007, Petitioner received an Incident Report for Possession of Anything Not Authorized (Code 305), and Possession of Money Not Authorized (Code 303).  (Norenberg Decl. ¶ 4, Attach. 2.)  A staff member had reported that several items of contraband were located at Petitioner's work site, including a cell phone that Petitioner attempted to destroy after it was discovered.  (*Id.*)[1]  The Incident Report, which was prepared on the day of the

---

[1]     On October 4, 2006, the Warden had notified inmates at the prison that
(Footnote Continued on Next Page)

incident, included the following description:

> On Thursday February 22, 2007 at approximately 1:30 pm I, Senior Officer Specialist G. Davis and Senior Officer Morgan searched inmate Ford, Jermaine 37135-037 work site.  At this time I found two (2) cellphones, two (2) chargers, three (3) earpieces one (1) Portable DVD Player with remote and charging cable, eighteen (18) DVD's one (1) bottle of Xenadrine RFA-1 and one hundred and forty-nine (149) dollars.  Inmate Ford #37135-037 reached for the LG Cellphone and threw it on the ground in an attempt to destroy the cellphone.  I called for assistance.  Department of Defense Police and FCI Fort Dix staff arrived to the scene.  Inmate Ford #37135-037 was placed in handcuffs.  Operation Lieutenant C. Lewars was immediately notified.

(Doc. No. 1, Ex. A.)

The Incident Report was rewritten a month later on March 20, 2007.  The new Incident Report included the charge for Possession, Manufacture, or Introduction of a Hazardous Tool (Code 108).  The charges for violations of Code 305 and Code 303 were later dropped.  The March 20, 2007 Incident Report included an additional detail about the incident, explaining that when the two staff members approached Petitioner at his work site, Petitioner started to tape a cardboard box; the cardboard box had a white extension cord going inside the box.  (Doc. No. 1, Ex. B.)  A staff member provided Petitioner with a copy of the rewritten Incident Report on March 20, 2007.

The matter was referred to the Unit Discipline Committee ("UDC") for

---

(Footnote Continued from Previous Page)
they would be charged with a Code 108 if found with certain electronic
(Footnote Continued on Next Page)

review on March 26, 2007.  A UDC consists of one or more institutional staff members designated by the Warden with the authority and duty to hold an initial hearing upon completion of the investigation.  28 C.F.R. § 541.15.  A UDC can expunge a minor, non-repetitive incident report, determine that the inmate committed the prohibited act and impose minor sanctions, or refer the matter to a DHO for further review/action.  *Id.*

Based on the severity of the offense, the UDC referred the matter to a DHO for disposition.  (Norenberg Decl. ¶ 5.)  The UDC recommended that Petitioner be sanctioned with the disallowance of good conduct time, loss of telephone privileges for 365 days, loss of visiting privileges for 180 days, disciplinary segregation, and a disciplinary transfer, if the DHO found Petitioner to have committed the prohibited act.  (*Id.*)

On March 26, 2007, Petitioner was provided with a Notice of Discipline Hearing Before the DHO and a document entitled "Inmate Rights at Discipline Hearing," which set forth various due process rights that an inmate at a hearing before the DHO has, including, for example, the right to call witnesses, to present evidence, and to have a fulltime member of the prison staff represent the inmate before the DHO.  (Norenberg Decl., Attach. 2.)  The DHO hearing was conducted on April 5, 2007.  (Norenberg Decl. ¶ 5.)  Petitioner was again advised of his right to a staff representative and the right to call witnesses.  (*Id.*)  At the hearing,

---

(Footnote Continued from Previous Page)
communication devices, including a cell phone.

Petitioner reportedly made the following statement:

> That is not what happened.  They came in and searched the place.  They patted me down and they found the pills on the top of the shelf.  Then they went into the box.  I did pick up the phone and that's why they called back-up.  It is a big warehouse.

(Norenberg Decl. ¶ 5, Attach. 2.)  Petitioner did not call any witnesses or provide any documentary evidence on his behalf.  (*Id.*)

The DHO found that Petitioner had committed the prohibited act of Possessing a Hazardous Tool (Code 108), and sanctioned him with the disallowance of 40 days of GCT, 60 days disciplinary segregation, forfeiture of 60 days of non-vested GCT, loss of phone privileges for 18 months, and loss of visiting privileges for 60 days.  (Norenberg Decl. ¶ 6, Attach. 2.)  The DHO prepared a written report of the findings, sanctions, and reasoning of the decision.  (*Id.*)  Petitioner appealed.

When Petitioner appealed the findings of the DHO through the Administrative Remedy Program, his DHO Report initially could not be located.  (Norenberg Decl. ¶ 7, Attach. 3.)  The BOP Regional Office remanded the Incident Report to the institution, not for expungement as a result of any due process errors, but due to the missing disciplinary packet.  The incident was noted in BOP records as:  "EXPUNGE UNTIL LOCATED; RE-ISSUE A COPY TO INMATE IF FOUND; (OR) REWRITE AND REHEAR."  (*Id.* at Attach. 2.)  The original DHO Report was located and, in accordance with instructions from the BOP Regional Office, was re-issued to Petitioner.  (*Id.*)  Petitioner, however,

refused to sign for the re-issued Report.  (*Id.*)  Even so, Petitioner again pursued his administrative remedy appeal.  His appeal was initially rejected because the Regional Office mistakenly thought that a rehearing had been held on his case and requested that Petitioner send in a copy of the DHO Report from the rehearing.  (Norenberg Decl. ¶ 7, Attach. 3.)  However, once the DHO Report was re-issued to the Petitioner and located, and it was determined that there was no need to conduct a rehearing, the administrative appeal process continued.  The decision of the DHO was upheld at the Regional and Central Office levels.  (*Id.*)  As a result, Petitioner has appropriately exhausted his administrative remedies.

### III.  STANDARD OF REVIEW

In order for relief to be granted under 28 U.S.C. § 2241, Petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  It is well-settled that "[a] necessary predicate for the granting of federal habeas relief [to a Petitioner] is a determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States."  *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241).  Petitioner's constitutional claim is that he was not afforded due process as required by the Fifth Amendment.

Depriving Petitioner of good conduct time credits as a discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause of the Fifth Amendment.  See *Wolff v. McDonnell*, 418 U.S. 539,

6

557 (1974). In reviewing due process in this context, it is important to keep in mind that internal prison disciplinary proceedings do not function in the same manner as criminal prosecutions and inmates are not afforded the full "panoply" of rights as criminal defendants. *See Ponte v. Real*, 471 U.S. 491, 495 (1985). In *Wolff*, the Supreme Court held that where certain basic procedural elements of the discipline process exist, the Constitution's guarantee of procedural due process would be satisfied. The five elements required for procedural due process with regard to a prison disciplinary hearing are: (1) written notice of the charged misconduct at least 24 hours before the hearing; (2) an impartial hearing body; (3) an opportunity to present witnesses and documentary evidence; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement of the evidence relied upon and reasons for the sanction. 418 U.S. at 564-70.

Even if procedural due process requirements are satisfied, we still must determine whether there was sufficient evidence to support the decision to discipline Petitioner. In *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985), the Supreme Court provided guidance regarding the appropriate standard of review to apply in our assessment of prison disciplinary decisions involving the loss of good conduct time credits. The requirements of due process are met, and the decision of the prison discipline officer must be upheld, if there is "*some evidence*" to support the decision. *Hill*, 472 U.S. at 455, 457 (emphasis added). In *Hill*, the court described the process to be used by the

7

reviewing court as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witness, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (emphasis added). Once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. *See id.* at 457. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456.

## IV.  DISCUSSION

### A.  Due Process

The procedural due process requirements set forth in *Wolff* were met in this case. Petitioner was provided with a copy of the February 22, 2007 initial Incident Report on the same day as the incident. The Incident Report was later re-written, as permitted by Program Statement, 5270.07, *Inmate Discipline and Special Housing Units.* Petitioner contends that the second Incident Report contains "altered and added" information about the incident, which he asserts was included in order to assure a guilty finding by the DHO. (Doc. No. 9, Opp'n to Government Resp. to Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 at 3.)  However, review of the two Incident Reports shows that there was

8

no due process violation involved in the amendment of the Incident Report. The second Incident Report merely added the fact that Petitioner started to tape a cardboard box that had a white extension cord going inside. This provided Petitioner with greater detail about the charge, so that he could prepare his defense. The second Incident Report also dropped to two charges (the Code 303 and 305 violations) and added the charge of Possession, Manufacture or Introduction of a Hazardous Tool (Code 108). This new charge was specifically aimed at the cell phone violation. There had been no prior adjudication of the previous charges and Petitioner was not in any way prejudiced by the amendment.

     This Court has reviewed the record and is satisfied that all of the *Wolff* elements required for procedural due process with regard to a prison disciplinary hearing were met. Written notice of the charge of misconduct was provided to the Petitioner at least 24 hours before the hearing before the DHO. Petitioner had a full and fair opportunity to present witnesses and documentary evidence, and was offered the assistance of a staff member to act as Petitioner's representative. In addition, the DHO was an impartial hearing officer, and wrote a report setting forth the evidence relied upon and the reasons for the sanction.

     Further, Petitioner was given a full and fair opportunity to appeal the DHO decision through the administrative remedies provided by the BOP. Although there may have been some confusion about the location of the DHO Report at the start of the appeal process, there is nothing to suggest that Petitioner's due

process rights were in any way impaired. The administrative appeal process was fully carried out, and the decision of the DHO was upheld at the Regional and Central Office levels. Therefore, Petitioner was provided the requisite due process.

### B.  Sufficiency of the Evidence

As noted above, this Court's role in reviewing prison disciplinary proceedings is very limited because the court should not interpose its decision concerning the weight of the evidence. Instead, once the court determines that there is "some evidence" to support the DHO's finding, the court must reject the evidentiary challenge by the petitioner and uphold the DHO's finding. *Hill*, 472 U.S. at 457.

Based on the greater weight of all of the evidence, and on Petitioner's admissions that he was in the area described in the Incident Report and that he did pick up the phone, the DHO found that Petitioner committed the prohibited act of Possessing a Hazardous Tool (Code 108). This Court has reviewed the record and the DHO's decision to determine whether there is sufficient evidence to support the sanction given. The record shows that the DHO considered, and relied upon, substantial evidence of Petitioner's guilt, including:  (1)  the statement from Officer Davis, the reporting staff member; (2) an October 4, 2006 memorandum by the Warden notifying inmates that they would be charged with a Code 108 if found with electronic communication devices such as a cell phone; (3) Program Statement 5270.7, *Inmate Discipline and Special Housing Units,*

which indicates it is an inmate's responsibility to keep his area free of contraband; (4) a memorandum dated February 22, 2007, from Officer Morgan outlining all the contraband items that he and Officer Davis found in Petitioner's work area; and (5) photographs of the contraband at issue.  *Id.*  Thus, the record shows that there was "some evidence" to support the DHO's finding that Petitioner committed the prohibited act of Possessing a Hazardous Tool (Code 108) and the *Hill* standard was met.  *See* 472 U.S. at 455.  Therefore, Petitioner's constitutional rights were not violated, and no evidentiary hearing is necessary in this matter.

## V.  RECOMMENDATION

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  The Petition of Jermaine Ford for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) be **DENIED**; and

2.  This action be **DISMISSED WITH PREJUDICE**.


Date:  February 20, 2009

                                            *s/ Jeffrey J. Keyes*
                                            JEFFREY J. KEYES
                                            United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 6, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the

objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.